**In the Matter of William R. LONG.**

**No. 20S00–9006–DI–403.**

Supreme Court of Indiana.

Sept. 1, 1993.

William R. Long, pro se.

David B. Hughes, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Respondent, William R. Long, was charged in a Verified Complaint for Disciplinary Action with numerous violations of the *Rules of Professional Responsibility for Attorneys at Law.* A hearing officer was appointed pursuant to Ind.Admission and Discipline Rule 23(11)(b), and, following hearing, he tendered to this Court his findings of fact and conclusions of law. This matter is now before this Court for final determination. Neither the Respondent nor the Disciplinary Commission have challenged the hearing officer's report.

When neither party challenges the hearing officer's findings, this Court accepts them with the reservation that final determination rests with this Court.

Respondent was admitted to the Bar of this state on October 10, 1973, and as such is subject to the disciplinary jurisdiction of this Court. Respondent is also sole shareholder, director, president, and treasurer of Drink, Inc., an Indiana corporation which

operates two package liquor stores under the name "Main Package Liquor."

Dennis M. Haggerty and D. Lynn Haggerty ("the Haggertys"), preparing to move to Germany, employed Respondent to handle the sale of their home and gave Respondent a written power of attorney to do so. At the sale closing on August 19, 1988, Respondent received for the Haggertys $26,172.64 from the purchasers of the home. In return, Respondent executed a warranty deed as attorney-in-fact for the Haggertys and delivered it to the purchasers. Respondent collected a $150.00 fee from the sale proceeds, as evidenced by a statement he submitted at closing.

On August 26, 1988, the Haggertys directed Respondent to "hold onto the proceeds" of the sale and to forward to them, in Germany, a list of investment options. Respondent opened a trust account on September 19, 1988, and in it deposited the $26,172.64, along with $1,120.00 of other clients' funds. Between September 29 and November 21, 1988, Respondent wrote checks on the trust account, payable to the order of Main Package Liquor, totalling $21,500.00. Respondent used the check proceeds to purchase inventory for his liquor stores. Drink, Inc., issued no notes, stock, or evidence of indebtedness to the Haggertys. They had no knowledge of the transactions and had never authorized such expenditures.

The Haggertys requested, on November 5, 1988, that Respondent place their funds into a six-month renewable certificate of deposit. In early 1989, Respondent sent the Haggertys a copy of the sale closing statement which indicated proceeds of $26,-172.64. In an accompanying letter, he acknowledged receipt of proceeds from a sale of their personal property, bringing the total of "proceeds available for investment" to $26,293.91. He briefly outlined various investment opportunities, and stated falsely that he had temporarily invested the funds. Respondent also proposed borrowing the funds to invest in his liquor stores, promising an eleven percent return.

On April 24, 1989, the Haggertys again advised Respondent that they wanted the funds placed in six-month certificates of deposit. Respondent failed to respond. They wrote a similar letter to Respondent again on August 18, 1989. In a letter dated October 28, 1989, Respondent informed the Haggertys that he was awaiting a reply to a June 10, 1989 letter that he purported to have written to them, and indicated he did not have their social security numbers and therefore could not invest the funds. He further informed them he would re-invest the funds as soon as maturities would allow, thus falsely suggesting that the funds had been properly invested. Shortly thereafter, the Haggertys filed a complaint for conversion against Respondent, in response to which Respondent filed an answer and counterclaim, asserting that the lawsuit was meritless, that the funds were properly invested, and that a grievance the Haggertys filed with the Commission was groundless. The lawsuit settled in July, 1990, and Respondent agreed to and eventually paid the Haggertys $30,-581.84.

■ The foregoing findings clearly and convincingly establish that Respondent failed to abide by his clients' decision concerning the objectives of representation in violation of Ind.Professional Conduct Rule 1.2(a); that he failed to keep his clients reasonably informed and failed to promptly comply with their reasonable requests for information in contravention of Prof. Cond.R. 1.4; that he failed to hold the property of his clients separate from his own, thereby violating Prof.Cond.R. 1.15(a); and that he failed to deliver to his clients funds they were entitled to receive and to promptly render a full accounting of those funds in violation of Prof.Cond.R. 1.15(b). Further, Respondent committed a criminal act that reflects adversely on his honesty, trustworthiness, and fitness as a lawyer in other respects, thereby violating Prof. Cond.R. 8.4(b); he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c); and he engaged in conduct prejudicial to the administration of justice, thereby violating Prof.Cond.R. 8.4(d).

Having found misconduct, this Court must now determine an appropriate sanction. In doing so, we consider the offense, the duties violated, actual or potential injury, the Respondent's state of mind, this Court's duty to preserve the integrity of the Bar, the risk to the public if the attorney is permitted to continue in the profession, and circumstances in aggravation or mitigation. *In re Shaul* (1993), Ind., 610 N.E.2d 253.

Respondent's conduct demonstrates a complete lack of candor, honesty, and trustworthiness in his relationship with his clients. He egregiously breached the most fundamental tenet of the attorney-client relationship, that being an attorney's fiduciary duty to the client. Such conduct denotes a clear lack of integrity essential to law practice. Courts in other jurisdictions have recognized the severity of such conduct and held that misappropriation of client funds held in trust warrants the most stringent sanctions. See, e.g., *In re Wilson* (1979), 81 N.J. 451, 454, 455, 409 A.2d 1153, 1154, 1155 ("[r]ecognizing the nature and gravity of [misappropriation of client funds] suggests only one result—disbarment"); *Carter v. Ross* (1983), R.I., 461 A.2d 675 (disbarment appropriate where attorney misappropriates client funds for personal use). In these cases, disbarment serves to remove the offender from relationships of trust in which he might be tempted to repeat his misconduct, and to preserve the integrity of the profession as a whole.

In light of the considerations above, and noting further a complete lack of mitigating circumstances in this case, we conclude that Respondent's misconduct warrants the strictest sanction. It is, therefore, ordered that the Respondent, William R. Long, is hereby disbarred from the practice of law.

Costs of this proceeding are assessed against the Respondent.