### In the Matter of Marvin W. SHUMATE.

### No. 49S00–9206–DI–490.

Supreme Court of Indiana.

Dec. 30, 1993.

Clifford R. Courtney, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

### PER CURIAM.

■ The Respondent here, Marvin W. Shumate, was charged by an amended disciplinary complaint with several violations of the *Rules of Professional Conduct for Attorneys at Law.* All charges arise out of Respondent's representation of Jordanbeau Davis ("Davis"), and a subsequent investigation of Respondent by the Disciplinary Commission based on a grievance filed by Davis. This court appointed a Hearing Officer pursuant to Ind. Admission and Discipline Rule 23(11)(b), who, after full hearing, tendered his findings of fact and conclusions of law. Neither party has petitioned this Court for review, and we thus accept and adopt the Hearing Officer's findings, but reserve the right to evaluate such findings and reach conclusions as to misconduct.[1] *In re Stover–Pock* (1992), Ind., 604 N.E.2d 606, *In re Huebner* (1990), Ind., 561 N.E.2d 492.

Accordingly, we now find that Respondent was admitted to the Bar of this state on June 4, 1982, and is therefore subject to the disciplinary jurisdiction of this Court. Respondent's client, Davis, believed Prudential Insurance Company of America ("Prudential") owed him $4,419.91, an amount representing accrued cash value in a life insurance policy he owned. Davis

---

1. The parties have filed with this Court stipulations and an order correcting the Hearing Officer's findings. The changes reflected in that order will be incorporated into the findings recounted in this opinion.

pursued the matter, but was informed by Prudential, by letter in August, 1989, that Davis had borrowed $4,419.91 against the cash value of the policy in 1982, and thereafter had not repaid the loan principle or tendered further premiums. Prudential enclosed a photocopy of the loan check payable to Davis and bearing his endorsement. Davis contended he never received the loan proceeds, and, in late 1989, arranged to have Respondent begin efforts to recover the policy's cash value.

Respondent diligently pursued the matter, writing multiple letters and having several telephone conversations and at least one meeting with Prudential representatives. He obtained a document, dated April 25, 1985, which reflected "Total Accumulated Dividends/Including Interest" of $1,149.88, and "Amount of Policy Loan/Excluding Interest Due" of $4,419.91. Respondent thought Davis might have a valid claim against Prudential for some sum. During the course of the investigation, Respondent had several conferences with Davis.

In May or June, 1990, Respondent informed Davis that if he desired to continue pursuing the matter, he must file a lawsuit, which would require payment of a retainer and filing fees. Davis made no such payment to Respondent, and did not communicate with Respondent again until December, 1990, at which time Respondent again informed him that the filing of a lawsuit was needed to proceed further. Davis became upset and discharged Respondent. On February 28, 1991, Davis confronted Respondent, demanding money from Prudential. Respondent again informed Davis that he could do nothing until suit was filed, whereupon Davis threatened Respondent and his family with physical violence. Although Respondent never received money from Prudential, he told Davis he would pay him out of his personal funds and gave Davis a check for $1,148.88, drawn upon the account of "Shook and Shumate, Attorneys at Law." Respondent told Davis not to cash the check for several days. Davis presented the check for payment on March 8, 1991, but the bank refused to honor it.

Davis again threatened Respondent, whereupon Respondent told Davis he would bring cash to his home. On the evening of March 8, 1991, Respondent gave Davis $1,200.00 in cash, and Davis signed a receipt for $1,149.88. Davis did not return the check.

Respondent did not hear from Davis again until June, 1991, when Davis demanded $4,419.91. He again threatened Respondent when Respondent told him he had received nothing from Prudential. Davis filed a grievance and request for investigation with the Disciplinary Commission on July 1, 1991, alleging that Respondent's check had bounced and that Respondent thereafter refused to communicate with him. Davis again presented the check for payment on July 30, 1991. The bank honored it, paying the proceeds to Davis.

On July 15, 1991, Respondent provided a written response to the Commission's investigative inquiry regarding Davis's grievance. Respondent stated that he had pursued collection of the unpaid cash value, and that Prudential supplied evidence of a loan against the policy. He stated that Davis told him that he had not received the money or endorsed the loan check. Respondent further stated:

> I also determined that Mr. Davis was due an additional amount of money under another policy and was able to secure that for him. I deposited the check into my trust account at his direction ... My next step was to secure funds [from the] account ... That evening, I took the cash to Mr. Davis, paid him the amount in question, and obtained a receipt from him ...

Later, investigators asked Respondent to submit copies of bank statements from his trust account, along with additional information regarding maintenance of that account. On August 6, 1991, Respondent told Indianapolis Bar Association Grievance Committee member Sue Figert Meyer that he had not obtained funds from Prudential, and further that he paid Davis from personal funds from a law firm business account, not from a trust account.

We conclude that by falsely stating, in his July 15 statement, that he had secured funds from Prudential and deposited them into his trust account, Respondent violated Prof.Cond.R. 8.1(a), which provides that an attorney shall not knowingly make a false statement of material fact in connection with a disciplinary matter. Further, by making the statement, Respondent violated Prof.Cond.R. 8.4(c) by engaging in conduct involving dishonesty, deceit, and misrepresentation, and Prof.Cond.R. 8.4(d) by engaging in conduct that was prejudicial to the administration of justice. There is not sufficient evidence to support a finding that Respondent failed to keep his client informed about the status of a matter to the extent necessary to permit him to make informed decisions, in contravention of Prof.Cond.R. 1.4(a) and 1.4(b).

Now that we have found misconduct, it is the duty of this Court to assess an appropriate sanction. In doing so, we examine several factors, including the nature of the conduct at issue, and aggravating and mitigating circumstances. Respondent's less than honest response to the Commission's initial investigative inquiry represents a significant breach of professional ethics. As a member of a licensed and regulated profession, Respondent and all lawyers are called upon to conform to a rigid set of ethical guidelines. Fundamental in this framework is the concept that lawyers must abide by high standards of integrity and honesty. Respondent's deceitful statements represent a serious departure from these expected norms. Further, ours is a profession that is largely self-governed. It is a perversion of the disciplinary enforcement mechanism when a lawyer intentionally places false statements of fact before the Commission. Such actions seriously inhibit the ability of the Commission to effectively carry out its mission.

We note that Respondent engaged in no misconduct regarding his association with his client. We further recognize that he admitted to the falsity of his statements approximately three weeks after they were made, although the genuineness of his desire to correct his false statements is questionable, since he had no other option in the face of requests for specific bank records which did not exist. The fact that Respondent has never before been the subject of a disciplinary action mitigates in his favor.

In light of the above considerations, we are persuaded that a period of suspension is an appropriate sanction. Although Respondent's transgressions are significant, we do not feel that he is a continued threat to his clients or the legal profession. At the same time, it must be made clear that unethical manipulations of the disciplinary process will not be tolerated. A suspension for a definite period of time comports with that suggested by the American Bar Association where an attorney "knowingly engages in conduct that is a violation of a duty owed to the legal profession." American Bar Association *Standards for Imposing Lawyer Sanctions*, Standard 7.2.

It is, therefore, ordered that the Respondent, Marvin W. Shumate, be suspended from the practice of law for a period of not less than thirty (30) days, beginning February 1, 1994.

Costs of this proceeding are assessed against the Respondent.

SULLIVAN, J., not participating.