**In the Matter of Marvin W. SHUMATE.**

No. 29S00–9310–DI–1140.

Supreme Court of Indiana.

March 8, 1995.

No appearance, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

In a nine-count complaint for disciplinary action, the Disciplinary Commission has charged Respondent Marvin W. Shumate with multiple violations of the *Rules of Professional Conduct for Attorneys at Law.* The hearing officer appointed by this Court to hear this matter has submitted his findings of fact and conclusions of law, therein finding that Respondent engaged in misconduct in eight of the nine counts. The hearing officer declined to recommend a specific sanction, although the Commission has submitted a memorandum on sanction, arguing that the nature and severity of Respondent's misconduct warrants disbarment. Respondent failed to appear at any stage of the proceedings. This case is now before this Court for final resolution. Our jurisdiction here is based upon Respondent's admission to this state's Bar in June, 1982.

■ Where neither the respondent nor the Commission requests this Court's review of the hearing officer's report, we may accept and adopt such report, with the caveat that final determination as to misconduct and sanction rests with this Court. *In re Huebner* (1990), Ind., 561 N.E.2d 492. Accordingly, we adopt the findings contained in the hearing officer's report, and now find as follows:

### Count I.

On November 12, 1992, a criminal defendant's mother (the "mother") retained Re-

spondent to represent her son (the "defendant") by giving Respondent a check for $5,000.00. Respondent deposited $4,000.00 of the check proceeds into his business checking account the next day, and kept the remaining $1,000.00 in cash. After the deposit, Respondent's business checking account posted a balance of $4,688.77.

At the time Respondent was retained, the defendant was incarcerated in the Allen County Jail. Respondent told the mother that he would visit the defendant at the jail on November 19, 1992, but Respondent failed to do so. Respondent also failed to enter an appearance in the case. Following the missed jail visit, the defendant's mother, by telephone, discharged Respondent and demanded return of the $5,000.00 retainer. Respondent obliged on November 25, giving the mother a check drawn upon his business checking account. The mother attempted to deposit the check into her bank account, but the check was returned to her on December 8, 1992, due to insufficient funds. The day Respondent drew the check, his business checking account contained a balance of $2,582.96. Bank records indicated that Respondent was using his business account during this period for various personal expenditures.

Respondent subsequently promised the mother that he would refund the retainer with a cashier's check, but failed to ever do so. The mother ultimately obtained a civil judgment against Respondent for over $16,500.00, but was unable to collect that judgment.

We find that Respondent's conduct in Count I violates Ind.Professional Conduct Rules 1.15(b) and 1.16(d) in that he failed to promptly deliver monies to a client who was entitled to receive the funds. Further, by knowingly converting a client's funds to his own use, Respondent committed criminal acts and thus violated Prof.Cond.R. 8.4(b) and 8.4(c).

### Count II.

Respondent agreed to represent an individual (the "client") in a lawsuit against the client's employer. The client sought $70,000.00 in damages due to the theft of his tools from his employer's premises. Respondent informed the client of a statute of limitations problem with the case, but informed him that the problem might be overcome. On October 18, 1990, Respondent filed a complaint in Marion Superior Court, alleging that the client's tools were stolen from the employer's premises on October 19, 1988. Respondent, however, knew the true date of the theft was October 16, 1988.

On November 27, 1990, opposing counsel advised Respondent that, according to police records, October 16 was the actual theft date, and that the statute of limitations had expired prior to the filing of the action. Opposing counsel suggested he seek voluntary dismissal of the action. Respondent filed a motion to dismiss on December 26, 1990, without first informing his client of his intent to do so. The court granted the motion that day. Respondent thereafter misrepresented the status of the matter to his client by telling him that he was negotiating the claim with the employer. By letter dated December 7, 1991, almost one year after the action's dismissal, Respondent told his client that a court date had been set for the matter, even as he continued to negotiate. On May 18, 1992, Respondent informed his client that he had obtained a settlement from the employer's insurer in the amount of $30,000.00. That amount, Respondent stated, was to be paid to the client in thirty monthly installments of $1,000.00 each. Respondent drafted a settlement agreement containing these terms, and presented it to the client for signature. There was in fact no settlement reached.

Between June 6, 1992, and May 1, 1993, Respondent delivered eleven (11) $1,000.00 checks to his client, each drawn on Respondent's business checking account. Respondent informed his client that the payments were from third parties in accordance with the purported settlement. In reality, the funds were Respondent's own or those of third parties controlled by Respondent. After the eleventh check, the payments to the client ceased, and the client was thereafter unable to contact or locate Respondent.

By dismissing his client's complaint without authorization or consent, Respondent vio-

lated Prof.Cond.R. 1.2(a) in that he failed to consult with his client concerning the objectives of the representation and to abide by his client's decisions concerning the matter. By failing to timely pursue his client's claim, Respondent violated Prof.Cond.R. 1.3 by failing to act with reasonable diligence and promptness. He generally failed to keep his client informed of the status of the matter, and specifically failed to advise his client of the statute of limitations applicable to the case and thus violated Prof.Cond.R. 1.4(a) and (b). Respondent violated Prof.Cond.R. 1.1 in that such representation was incompetent. He violated Prof.Cond.R. 3.3(a)(1) by making a false statement of material fact to a tribunal, and violated Prof.Cond.R. 3.1 by filing an action he knew was frivolous. Further, he violated Prof.Cond.R. 8.4(c) by misrepresenting to his client that the claim was still viable and by informing him that a settlement existed, when in fact there was no settlement.

## Count III.

In April of 1993, Respondent agreed to represent a husband and wife (the "clients") in a breach of contract dispute with a creditor in Marion County Small Claims Court. Respondent and the clients agreed that Respondent would bill them for the representation at its conclusion. Respondent entered an appearance on April 30, 1993, and immediately secured a continuance of the hearing date until May 28, but failed to so inform his clients. Neither Respondent nor the clients appeared on the scheduled hearing date. Accordingly, a default judgment was entered in favor of the creditor for $904.79. Respondent failed to notify his clients of the default judgment. On June 22, 1993, Respondent convinced the creditor to accept a $212.00 reduction of the amount of the judgment, on the condition that the balance be paid in a lump sum. Respondent did not notify his clients of the underlying negotiations, nor did he communicate the creditor's offer to them. Instead, on July 12, 1993, Respondent told his clients that the creditor was willing to settle the matter for $85.00. The clients submitted a check in that amount, which the creditor rejected.

After obtaining a default judgment against the clients, the creditor instituted proceedings supplemental and obtained service of interrogatories upon the clients' bank. Respondent did not notify the clients of institution of the proceedings. The clients learned of the earlier default judgment on July 19, 1993, when the bank informed them that their checking account was frozen. The clients paid the judgment amount in full to release the hold on their account. They were subsequently unable to contact or locate Respondent.

We conclude that by entering his appearance on behalf of the clients and then failing to take action thereafter, Respondent violated Prof.Cond.R. 8.4(a) by engaging in conduct that was prejudicial to the administration of justice. Respondent also violated Prof.Cond.R. 1.3, 1.4(a) and 1.4(b).

## Count IV.

After obtaining a $500.00 settlement check on behalf of an incarcerated client, Respondent deposited the check's proceeds into his business checking account. He negotiated the check by endorsing it with his signature and causing the forged signature of his client to appear on the check. The client thereafter never received any of the settlement proceeds. Further, Respondent used the proceeds for his own use and benefit without the authorization or consent of the client.

By causing the settlement check to be endorsed with a forged signature, Respondent violated Prof.Cond.R. 8.4(b) and 8.4(c).

## Count V.

A claimant (the "client") in a worker's compensation action hired Respondent in January, 1989, to conclude the action on her behalf. Respondent managed to negotiate for her an $8,800.00 settlement, and thereafter informed her that she could collect even more from her employer through a civil lawsuit. The client authorized such a suit, and Respondent filed a tort action against the employer in January, 1991. Counsel for the employer, after asserting various affirmative defenses (among them the exclusivity of the worker's compensation remedy), succeeded in having the case dismissed in July 1991, after Respondent failed to respond to the

employer's brief supporting its defenses. Respondent did not inform his client of the dismissal.

That same client also hired Respondent to represent her in a claim for damages against a business entity. Respondent neglected to actively pursue the claim, and instead told the client that he had received a $5,000.00 settlement offer from the business, payable in monthly installments of $500.00. In fact, Respondent had fabricated this offer. The client accepted the bogus settlement offer, and Respondent gave her a check for $500.00 on December 14, 1992. Although that check was not honored due to insufficient funds, Respondent eventually paid the client a total of $2,000.00 pursuant to the fabricated settlement. He ceased making payments in April, 1993, and the client thereafter was unable to contact or locate Respondent.

By informing the client of a settlement that in reality did not exist, Respondent violated Prof.Cond.R. 8.4(c). He also violated Prof.Cond.R. 1.4(a) by failing to inform the client about the dismissal of the civil action against her employer, and violated Prof. Cond.R. 3.1 by filing a frivolous civil suit.

### Count VI.

Effective April 19, 1993, Respondent was suspended from the practice of law due to his failure to keep his continuing legal education requirements current. Despite such suspension, Respondent agreed to represent a criminal defendant ("defendant") in Marion Municipal Court after receiving $100.00 from the defendant's mother toward his quoted fee of $300.00. Respondent entered an appearance in the criminal action on July 8, 1993, and pre-trial conference was scheduled for August 16. On August 16, the defendant appeared for the conference, but Respondent did not. Although the defendant's mother was unable to contact or locate Respondent, she did later learn that Respondent had closed his law office.

By this conduct, Respondent violated Prof. Cond.R. 1.3, 1.4(a), 1.4(b), and 8.4(a).

### Count VII.

The Disciplinary Commission did not present evidence as to Count VII due to the unavailability of a witness. We therefore dismiss the charges under this Count.

### Count VIII.

Respondent's negotiations on behalf of a client he represented in a personal injury claim resulted in a settlement of $50,000.00. The settlement was paid by check made payable to the order of the client and his wife and Respondent's law firm. After receiving the check, Respondent deposited it into his newly-opened interest-bearing "office trust" bank account after having made no mention of receipt of the check to his client. At about the time he received the check, however, he telephoned the client's sister-in-law and told her that he might seek her assistance in endorsing the name of the client on the check. The endorsement signatures ultimately appearing on the check were not those of the client or his wife, but forgeries affixed thereto by Respondent or someone under his control without the authorization or consent of the client.

On August 18, 1992, Respondent gave the client a cashier's check for $25,594.67 for the client's share of the settlement proceeds. In addition to his own contingency fee, Respondent retained over $12,000.00 to pay off the client's medical bills. Thereafter, over a period of about one month, Respondent withdrew or transferred funds from the account containing the balance of the settlement proceeds until, by September 24, 1992, the account's balance was $39.24. Monthly bank service charges eventually exhausted this remainder, and the account was closed. Respondent never gave the client any amount representing interest earned while the client's proceeds were deposited. Respondent used the proceeds for purposes unrelated to the client. He also failed to pay off the medical bills for which part of the settlement proceeds were retained. He made only one $1,000.00 payment and unsuccessfully attempted to reduce the remaining bill through negotiation.

We conclude that by endorsing the settlement check with the client's signature without consent to do so, and by converting funds earmarked for payment of his client's medical debts, Respondent violated Prof.Cond.R. 8.4(b) and 8.4(c). By failing to remit interest

earned on the client's settlement proceeds to the client, Respondent violated Prof.Cond.R. 1.15(b) by failing to notify the client of funds received on his behalf, and by failing to deliver those funds to his client when he was entitled to receive them.

### Count IX.

In 1988, while on active duty with the United States Navy, Respondent signed an official Navy record in which he claimed that he had been previously married to a certain individual, and that the marriage was terminated by divorce on November 7, 1985. To support this assertion, Respondent produced a document purporting to be a divorce decree issued by a Florida trial court. In fact, Respondent created the document and the November 7, 1985 divorce never took place. Without having been legally divorced from his first wife, Respondent had married another woman. In February 1989, after the Navy filed formal military charges, Respondent admitted that he was not legally divorced from his first wife, that he fabricated the divorce decree, and that he married his second wife while still legally married to the first.

By giving the Navy the false divorce decree, Respondent violated Prof.Cond.R. 8.4(b) and 8.4(c). By stating falsely that he was legally divorced when he was not, and by marrying a second time when he was not legally divorced, Respondent violated Prof. Cond.R. 8.4(c).

Our findings of misconduct necessitate an analysis to determine an appropriate sanction. Such analysis entails examination of several factors relevant in this regard: the nature of the disciplinary offenses, actual or potential injury, the state of mind of Respondent, the duty of this Court to preserve the integrity of the profession, the potential risk to the public in permitting Respondent to continue in the profession, and matters in mitigation, extenuation, or aggravation. *In re Cawley* (1992), Ind., 602 N.E.2d 1022; *In re Wells* (1991), Ind., 572 N.E.2d 1290.

 Respondent has demonstrated a continuing pattern of severe misconduct, much of it predicated on his willful efforts to manipulate, mislead, and deceive for the pur-

pose of his own personal gain. A glance at almost any portion of the record in this case is apt to reveal, at best, a blatant deception, and more likely outright theft of client funds. Respondent's actions demonstrate a complete betrayal of the trust his clients had placed in him as well as a total absence of the characteristics of honesty and trustworthiness necessary for law practice. As an aggravating circumstance, we note that Respondent has been disciplined by this Court before. *See In re Shumate* (1993), Ind., 626 N.E.2d 459 (thirty day suspension imposed for making false statements in connection with a disciplinary investigation). Further aggravating Respondent's misconduct is his complete lack of cooperation or participation in the disciplinary process in the present case. Based on the record before us, we have to agree with the Commission's characterization of Respondent as an individual who is virtually pathological in his inability to speak the truth or act with a modicum of integrity.

We note that the *American Bar Association Standards for Imposing Lawyer Sanctions* provide that in instances of knowing conversion of client funds where harm is done to the client, or where a lawyer knowingly deceives a client for the benefit of the lawyer and to the damage of the client, or where a lawyer engages in serious criminal conduct, an element of which is fraud or theft, the appropriate sanction is disbarment. *See ABA Standards,* Standards 4.1, 4.61, 5.11. Similarly, this Court has consistently imposed disbarment where a lawyer exhibits a pattern of conversion of client funds. *See In re Good* (1994), Ind., 632 N.E.2d 719; *In re Meacham* (1994), Ind., 630 N.E.2d 564; *In re Dahlberg* (1993), Ind., 611 N.E.2d 641; *In re Long* (1993), Ind., 619 N.E.2d 919; *In re DeWitt* (1978), 268 Ind. 160, 374 N.E.2d 514. Finally, we must consider this Court's duty to protect the public and profession from the tactics of unscrupulous lawyers. It is difficult to imagine a situation which more clearly actuates this duty.

In light of the above considerations, we conclude that Respondent should be given the strongest sanction available. It is, therefore, ordered that Respondent Marvin W. Shumate is hereby disbarred. The Clerk of

this Court is ordered to strike his name from the Roll of Attorneys.

Costs of this proceeding are assessed against Respondent.

SELBY, J., not participating.