**In the Matter of Alfred L. TOWELL**

No. 53S00–9610–DI–627.

Supreme Court of Indiana.

Oct. 2, 1998.

Mary M. Runnells, Bloomington, for Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

PER CURIAM.

Attorney Alfred L. Towell was admitted to the bar of this state in 1978. As a result of his conduct in three separate matters, he has been charged in a six-count complaint for disciplinary action with:

1. failing to surrender papers and property of his client upon termination of representation and after the expiration of any

entitlement to retain them as permitted by law;

2. failing to promptly refund to his client an advance fee payment that he had not earned;

3. without authorization converting client and/or third party funds to uses not for the benefit of the client or third party; and

4. failing to timely respond to a lawful demand for information from the Disciplinary Commission related to each of the three occurrences set forth above.

A hearing officer appointed by this Court to hear this matter concluded that respondent Towell engaged in misconduct as charged, and this matter now comes before us for final resolution. Neither party challenges the findings of the hearing officer, although both parties have filed memoranda concerning proper sanction. We accept the unchallenged findings of the hearing officer with the understanding that we are the final arbiters of misconduct and sanction. *Matter of Barnes*, 691 N.E.2d 1225 (Ind.1998). As a preliminary matter, we note that Counts II, IV, and VI of the Commission's complaint contain similar allegations of misconduct and will be addressed herein together.

We now find that, under Count I of the complaint, the respondent represented an elderly woman, handling legal proceedings concerning her property in the state of Wisconsin. During the representation, the respondent came into possession of various papers and documents belonging to her. Subsequently, on February 25, 1993, the client verbally discharged the respondent as her attorney. She followed with a letter dated March 31, 1993, confirming the termination and directing the respondent to deliver her files to her banker. The respondent denies receiving this letter, but does acknowledge receiving a copy of the letter from another source on April 1, 1993. Litigation ensued between the client and the respondent in which he filed a counterclaim seeking payment of attorney fees and asserting an attorney's retaining lien.[1] Judg-

ment in the litigation between attorney and client provided that the client owed the respondent $3,020 and that the respondent would return case file materials to the client upon payment of the judgment. On December 3, 1993, during hearing on proceedings supplemental initiated by the respondent, the court found the client to be in contempt and ordered her jailed until she paid the judgment or until she posted adequate appeal bond. She remained incarcerated until December 8, 1993, when she paid the judgment. That payment was acknowledged by the respondent's *Satisfaction of the Judgment* filed on December 16, 1993.

On January 17, 1994, the client faxed a renewed demand for the return of her files to the respondent's attorney. The respondent claims he was never advised of this additional request by his client. By June 6, 1996, having still not received her files from the respondent, the client filed a grievance with the Commission.

▮ While the respondent may have been entitled to a retaining lien to secure payment of the judgment he obtained against his client, once she satisfied the judgment the respondent had no legal basis for retaining case file materials to which the client was entitled. Indiana Professional Conduct Rule 1.16(d) requires attorneys to take reasonably practicable steps to protect clients' interests upon termination of representation, including surrendering papers and property to which the client is entitled. The respondent did not return his client's papers to her despite her repeated requests. It was not until September 1996, well after satisfaction of the judgment supporting the respondent's retention of the case file materials, that the respondent complied with her request. Accordingly, we find that the respondent violated Ind.Professional Conduct Rule 1.16(d).

▮ Under Count III of the complaint, we now find that a client retained the respondent to represent her in the dissolution of

---

1. As authority to retain the case file materials pursuant to asserting the lien, the respondent cited *Bennett v. NSR, Inc.*, 553 N.E.2d 881 (Ind. Ct.App.1990) and *State ex rel. Shannon v. Hendricks Circuit Court*, 243 Ind.134, 183 N.E.2d 331 (1962). The Commission conceded that there is

case law in Indiana which recognizes an attorney's right to assert a retaining lien on client case file materials in order to secure payment of earned fees. In the case at bar, we have not been asked to consider this issue or how it applies in this case.

her marriage. From this client, the respondent accepted a $600 retainer with the understanding that he would attempt to secure a court order requiring the client's husband to pay the respondent's attorney fees. The dissolution decree entered June 4, 1993, required the ex-husband to pay $3,000 to the respondent in attorney fees, an amount representing compensation for all services rendered up to and including the final hearing. The respondent informed his client that upon the payment of the attorney fee award by the ex-husband, she would be entitled to a refund of her $600 retainer.

The client's ex-husband timely paid the $3,000 fee award to the respondent. Following entry of the decree, the client several times requested refund of her retainer. When the respondent refused to return any part, the client filed a grievance with the Commission. The Commission notified the respondent of the grievance on February 28, 1996. On April 5, 1996, the respondent mailed a check for $650 to his client, apologizing for the delay in refunding her retainer.

The respondent claims he did additional work for the client following the entry of the dissolution decree. The only evidence in that regard is a one-page letter, consisting of three short paragraphs, written to the attorney for the client's former husband on September 22, 1993. However, the respondent did not bill his client for any legal services after the entry of the final decree. Additionally, the respondent claims that "financial problems" contributed to his failure timely to refund his client's retainer.

Indiana Professional Conduct Rule 1.16(d) provides that, upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the interests of his client, including refunding any advance payment of fee that has not been earned. By failing to refund the $600 retainer his client had paid to him, the respondent violated the rule. The respondent's defense that he performed significant additional legal work is not supported by any additional billing to his client, nor are we persuaded that the one indicia of additional work, that being the brief letter of September 22, 1993, is sufficient to support a claim for fees of $600.

■ Under Count V, we now find that a client hired the respondent to handle a worker's compensation claim. On August 18, 1995, the respondent entered into a written stipulation settling the client's claim for $23,-904.76. On September 1, 1995, the respondent endorsed the settlement check in his name and as attorney for his client. He then deposited the settlement check into his "Escrow Account" which at the time of the deposit had a balance of $3.12. On September 5, 1995, the respondent provided his client with a settlement statement along with distribution of proceeds. The statement identified deductions of $3,890.48 for attorney fees, $531.00 for a rehabilitation consultant, and $1,059.87 for a treating chiropractor, leaving net proceeds of $18,423.41.

On September 1, 1995, prior to the client receiving his settlement proceeds, two checks for $250.00 cleared the respondent's escrow account. The checks were for the benefit of a person (a friend of another client) totally unrelated to the respondent's representation of the client in the worker's compensation matter. The client had not been consulted, nor did he agree to such use of his settlement proceeds. On September 5, 1995, the respondent used another $1,035.25 of the settlement proceeds to pay a medical bill of yet another client whose matter was completely unrelated to the first client's. Again, the first client did not consent to have his funds so used.

During the time when the respondent used his client's funds for the obligations of unrelated third parties, the respondent had not yet paid the chiropractor's bill. The chiropractor periodically sent bills to the respondent and communicated directly with the respondent's secretary. The secretary reported these communications to the respondent. Efforts by the chiropractor and the client to prompt the respondent to pay the bill failed. Finally, on February 12, 1996, the client filed a grievance with the Commission. On April 4, 1996, some seven months after the settlement of the claim, respondent sent full payment to the chiropractor.

We find that the respondent knew or should have known that his escrow account

did not have sufficient funds, other than those properly belonging to his worker's compensation client, to cover the two $250 checks he drew on the account for the benefit of the third party or the $1,035.25 medical bill he paid for the benefit of the other third party. The evidence demonstrates that he purposely used funds belonging to one client to pay the obligations of another. The respondent himself admitted at hearing that he knew there would be money in the account "very shortly" to replace the worker's compensation client's funds he used to pay other obligations. That short time ultimately stretched to three weeks, and there is no indication that the respondent's use of the funds was authorized in any way by his worker's compensation client. Criminal conversion requires knowing or intentional unauthorized control over the property of another. I.C. 35–43–4–3 [2]; *Computers Unlimited, Inc. v. Midwest Data Systems, Inc.*, 657 N.E.2d 165 (Ind.Ct.App.1995). The respondent's use of client funds held in trust for other obligations constitutes conversion of those funds and thus violated Prof.Cond.R. 8.4(b) as a criminal act which adversely reflects on the respondent's honesty, trustworthiness and fitness as a lawyer in other respects.

Further, by writing checks on the client's settlement proceeds for third parties completely unrelated to the client's representation and without the knowledge or consent of the client, the respondent engaged in conduct involving dishonesty and deceit in violation of Prof.Cond.R. 8.4(c) [3].

 Under Counts II, IV, and VI, the respondent is charged with failing timely to respond to lawful demands for information from the Commission in relation to the misconduct in Counts I, III, and V. In each instance, the Commission notified the respondent of the filing of a grievance and advised him of his obligation under Admis.Disc.R. 23(10)(a)(2) to provide a written response within 20 days.[4] The respondent was further notified that his failure to submit a timely response might subject him to disciplinary action. In each instance the respondent ignored this correspondence. Following further similar warning that also went unheeded, the Commission reclassified each matter as formal investigations of misconduct and again notified the respondent who again failed to respond.

Professional Conduct Rule 8.1(b) provides that a lawyer shall not knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority. By failing to respond to the Commission's demands for response pursuant to Admis.Disc.R. 23(10), the respondent violated the rule.

As justification for his failure to respond, the respondent pleaded ignorance of the requirement to respond. Considering the numerous notices respondent received from the Commission advising him of his obligation to respond, such plea is baseless. The respondent took no steps to reconcile his understanding of his obligation with the clear requirement set forth in the correspondence from the Commission.

Having found misconduct under each of the six counts, we now turn to assessment of appropriate discipline. The Commission asks us to disbar the respondent, arguing primarily that any instance of misappropriation of client funds warrants disbarment. The respondent argues that a reprimand is sufficient for his misconduct, because in large part it was the product of poor office management rather than an intent to deceive or misappropriate funds. He suggests he be directed to complete office management education as a condition of any discipline imposed.

 We conclude that the proper sanction for the respondent's misconduct lies somewhere in the middle of that suggested.

---

**2.** Specifically, criminal conversion is defined as knowingly or intentionally exerting unauthorized control over property of another person. I.C. 35–43–4–3.

**3.** Indiana Professional Conduct Rule 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

**4.** Indiana Admission and Discipline Rule 23(10)(a)(2) provides that a lawyer shall respond within twenty (20) days to a grievance forwarded by the Executive Secretary of the Disciplinary Commission.

It is true that outright theft of client funds generally warrants severe sanction, up to and including disbarment. *See, e.g, Matter of Good,* 632 N.E.2d 719 (Ind.1994); *Matter of Shumate,* 647 N.E.2d 321 (Ind.1995). Those cases demonstrate that where a lawyer knowingly or intentionally steals [5] client or third party funds held in trust for the lawyer's own selfish benefit, that lawyer is viewed as being unfit to continue in the profession absent extremely compelling mitigating or extenuating factors. Here, respondent Towell clearly engaged in serious client and third-party fund mismanagement. However, we are convinced that the respondent's mission was not theft of client money. As the respondent explained it, from his "pooled" trust account he unwittingly permitted one client's funds to be used for other, unrelated obligations of other clients and/or third parties in an apparent good faith belief that other client funds would soon arrive to cover the expenditures. We, of course, are not persuaded that the respondent's actions were totally inadvertent or unwitting; however, we are convinced that he did not intend to deprive his worker's compensation client of the value or use of his funds sufficient to find theft of the funds. What he did was intentionally and without authorization use one client's funds for the benefit of others, intending all along to replace the money "very shortly" when the expected "replacement" funds became available. Unfortunately for everyone, the other client funds did not materialize for some time. As a result, the chiropractor's bill remained unpaid, prompting initiation of a disciplinary grievance. That course of events demonstrates an example of the potential pitfalls of poor client fund management.

Nevertheless, the respondent's acts indicate no selfish motive in his inappropriate use of his client's funds. As such, we view his acts as somewhat less culpable than outright theft. However, even in the absence of a finding that the respondent stole his client's money, his gross mishandling of funds held in trust for others nonetheless indicates serious professional shortcomings deserving of significant sanction, primarily

for the protection of other clients. Coupled with his callous and arrogant disregard of the Commission's authority and cavalier treatment of his clients' rights and interests upon termination of representation, we conclude that lengthy exclusion from practice is in order. Should the respondent ever be reinstated, he would be wise to implement more effective client fund management procedures.

It is, therefore, ordered that the respondent, Alfred L. Towell, be suspended from the practice of law for a period of not less than eighteen (18) months, beginning November 13, 1998, at the conclusion of which he shall be eligible to apply for reinstatement to the bar of this state pursuant to the requirements contained in Admis.Disc.R. 23.

The clerk of this Court is directed to provide notice of this order in accordance with Admission and Discipline Rule 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the clerk.

Costs of this proceeding are assessed against respondent.

---

**5.** Under Indiana criminal provisions, theft is defined as "knowingly or intentionally exert[ing] unauthorized control over the property of another person, *with the intent to deprive the other person of any part of its value or use ...*" I.C. 35–43–4–2 (emphasis supplied).