**In the Matter of Chris P. KOUROS.**

No. 45S00–9908–DI–442.

Supreme Court of Indiana.

Sept. 11, 2000.

Samuel J. Goodman, Highland, Indiana, for the Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM

Today we find that the respondent's temporary use of clients' funds (which he held in trust) for purposes unrelated to the clients, without his clients' knowledge or consent, warrants a suspension from the practice of law for at least twelve months.

This attorney disciplinary matter is now before us for final resolution upon a *Statement of Circumstances and Conditional Agreement for Discipline* tendered for our approval by Respondent Kouros and the Disciplinary Commission. The respondent's admission to the bar of this state in 1992 confers our jurisdiction in this case.

Under Count I, the parties agree that in March 1998, the respondent represented two clients in unrelated matters. He agreed to pay a $2,500 settlement on behalf of the first client with his own funds. He agreed to pay a $750 settlement in behalf of the other client, again with his own funds.

On March 16, 1998, the balance in the respondent's client trust account was about $83. That day, he issued a check for $2,500 to settle the first client's case. The next day, he issued a $750 check to settle the second's. The following day, he deposited into the account a $750 check from the second client, as well as another deposit of $1,750. The balance of the account that

day after the deposits was $2,583.70. On March 20, 1998, the $2,500 check cleared the account, reducing its balance to $83.70. The result of that transaction was to cause the second client's funds to be used to settle the first client's case, without the knowledge or consent of the second client. Five days later, the respondent deposited $750 of his own funds to cover the second client's settlement.

Under Count II, the parties agree that the respondent represented a client in a civil damages action. The parties agreed to settle the matter by the client's payment of $5,000. The client provided the respondent with the money, but the respondent failed to deposit it in his client trust account and instead used it for purposes unrelated to the client. At about that time, the balance in the respondent's trust account was $78.70.

The respondent also represented a second client, whose case had settled for $7,500. The opposing party's insurer provided the respondent with a check for that amount, which he deposited in his trust account, creating a balance of $7,578.70. The respondent's agreement with the client was for a ⅓ contingency fee, although the agreement was never reduced to writing.

The respondent during this time also represented a third client, who had provided the respondent with $137 earmarked to pay a diversion fee. The respondent failed to deposit the funds in his trust account and instead used them for purposes unrelated to the third client.

During the ensuing weeks, the respondent issued several checks drawn on the account in satisfaction of various obligations related to these clients and their settlements. The net effect of these withdrawals, coupled with his failure initially to deposit into the account all client funds or funds he held on their behalf, left it with an insufficient balance to cover their outstanding obligations or amounts owed to third parties. On June 19, despite depositing $7,500 he borrowed from his cousin to replenish the account and withdrawing $600 for his own use, the account contained insufficient funds to cover $10,000 he was to have been holding at that time for the benefit of the first and second clients. On June 22, after two checks for client obligations cleared, the account contained an insufficient balance to cover a $5,000 obligation to the second client. Between June 23 and June 26, the respondent's withdrawal of $550 further depleted below $5,000 the balance in the account, again depleting the second client's funds without the client's knowledge or consent. On June 29, checks drawn for the benefit of the second client (totaling $5,500) cleared, leaving the account with a balance of -$1,208.30.

Pursuant to Count III, we now find that the respondent received a $500 settlement check on behalf of the minor daughter of individuals who were otherwise the respondent's clients and for whom he was maintaining funds in his trust account. The respondent failed to deposit the check into his trust account and instead used the funds for purposes unrelated to the minor without her or her parent's knowledge or consent. Later, when the respondent issued a $500 check to the parents for the minor's benefit after having never deposited the initial settlement proceeds, the effect of issuing that check was to deplete the funds the respondent was otherwise holding for the parent-clients.

Under Count IV, we now find that on June 29, 1998, a day when the respondent's trust account posted a balance of -$1,208.30, the respondent issued a $1,370.11 check, representing the net proceeds of a real estate transaction, payable to a client. The next day, the respondent deposited $2,442.11, the proceeds from the client's real estate closing, into the account, to create a balance of $1,233.81, an amount less than the $1,370.11 he was obligated to pay to the client. During the next week, the respondent removed another $1,150 from the account for his own

benefit without the knowledge or consent of his client, and on June 30 allowed a bank fee of $23.95 to be debited against the account. By the time those transactions concluded, the account's balance was $59.86. On July 7, the $1,307.11 check to the client cleared, leaving its balance at -$1,310.25. On July 17, the respondent deposited $1,400 of his own funds into the account.

As to Count V, the parties agree that the respondent received a check for $750 on behalf of a client who was a worker's compensation claimant. Instead of depositing the proceeds into this client trust account, the respondent used the funds for his own benefit. He later issued a $750 check from his trust account to the client. Six days later, he deposited into the account $764.50 representing released bail bond funds related to his representation of another client, increasing the account's balance to $834.25. That day, the worker's compensation client's $750 check cleared, reducing the balance in the account to $84.25.

As for Count VI, the parties agree that the respondent settled a matter on behalf of a client, receiving $5,603.24. Pursuant to agreement, the client's net proceeds were to total $3,735.49. The respondent deposited the gross settlement proceeds into his client trust account, which before the deposit posted a balance of $81.80. After the deposit, the respondent withdrew his fee of $1,867.50, leaving the account with a balance of $3,817.54. Thereafter, while he should have maintained a balance of at least $3,735.49 to cover his obligation to his client, the respondent withdrew $500 from the account, lowering its balance to $3,317.54, without the client's knowledge or consent. He also allowed a $1.50 bank service charge to be deducted from the account. Over one month later, the respondent issued a check drawn on the account to his client for $3,235.49, $500

less that the proceeds due to the client. That same day, he issued another check to his client, drawn on his office operating account, for $500.

A lawyer should hold property of others with the care required of a professional fiduciary. *Comment* to Ind.Professional Conduct Rule 1.15. A component of this duty is contained in Prof.Cond.R. 1.15(a), which requires lawyers to hold the property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.[1] This "anticommingling" provision exists to safeguard client funds from attachment by a lawyer's creditors, and from misappropriation or inadvertent misuse by the lawyer or others. The respondent repeatedly infused his own funds into his client trust account to cover shortfalls occasioned by his own misuse of the funds, and by so doing violated the rule.

The parties further agree that by allowing client funds held in trust to be used for purposes unrelated to the client without the clients' knowledge or consent, the respondent converted the clients' funds. Conversion, under Indiana law, is defined as knowingly or intentionally exerting unauthorized control over the property of another person. *See* IC 35-43-4-3. The respondent converted his client's funds by allowing one client's funds to be used for the benefit of another, by permitting bank charges to be deducted from client funds, and by using client funds for personal obligations. Professional Conduct Rule 8.4(b) provides that it is professional misconduct for a lawyer to engage in a criminal act which reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects. By intentionally or knowingly exerting unauthorized control over his client's funds, we find he violated the rule. Those acts also involved dishonesty, fraud, deceit, and misrepresen-

---

1. Professional Conduct Rule 1.15(a) provides a limited exception to the "anticommingling" rule and permits a lawyer to deposit his or her own funds reasonably sufficient to maintain a nominal balance into a client trust account.

tation and thus violated Prof.Cond.R. 8.4(c).

■ Finally, in Count II, by failing to reduce his contingency fee agreement with his client to writing, the respondent violated Prof.Cond.R. 1.5(c).[2]

■ The parties agree that the appropriate discipline for the respondent's violations of the *Rules of Professional Conduct* is a suspension from the practice of law for a period of not fewer than twelve months, after which time he will be required to petition this Court for reinstatement should he desire to regain admission to the profession. In support of this sanction, they point to several factors in mitigation, noting the respondent's lack of prior discipline from this Court, his cooperation during this proceeding, and the fact that, due to his bank's decision to cover trust overdrafts, no client was at any time deprived of use of funds as a result of the respondent's actions. They also note that during the time of the respondent's trust fund mismanagement, he suffered from a gambling addiction and used client funds to cover gambling debts. They state further that the respondent acknowledged his addiction, is receiving counseling for it, participates in Gambling Anonymous, and is in recovery.

The respondent's misuse of client funds is remarkably similar to that of the respondent in *Matter of Towell*, 699 N.E.2d 1138 (Ind.1998). There, a lawyer, after receiving a worker's compensation settlement on behalf of a client, deposited the proceeds into his client trust account, only to later use significant portions of the funds for the benefit of unrelated third parties. We noted that the lawyer purposely used funds belonging to one client to pay the obligations of another out of his "pooled" client trust account in the apparent good faith belief that other client funds

would soon arrive to cover the expenditures. We noted further that

> [The Court is] not persuaded that the respondent's actions were totally inadvertent or unwitting; however, we are convinced that he did not intend to deprive his worker's compensation client of the value or use of his funds sufficient to find theft of the funds. What he did was intentionally and without authorization use one client's funds for the benefit of others, intending all along to replace the money "very shortly" when the expected "replacement" funds became available. Unfortunately for everyone, the other client funds did not materialize for some time … we view his acts as somewhat less culpable than outright theft. However, even in the absence of a finding that the respondent stole his client's money, his gross mishandling of funds held in trust for others nonetheless indicates serious professional shortcomings deserving of significant sanction, primarily for the protection of other clients. *Towell* at 1142.

■ While it is true that, in the present case, the respondent temporarily used at least some client funds to cover his gambling debts, like in *Towell* the agreed facts here evidence no intent permanently to deprive clients of their funds. This conclusion is fortunate for the respondent, since outright theft of client funds generally warrants very severe sanction, up to and including disbarment. *Id., citing Matter of Good*, 632 N.E.2d 719 (Ind.1994); *Matter of Shumate*, 647 N.E.2d 321 (Ind.1995). Given that the parties' agreement calls for a lengthy period of suspension, and in light of our policy of favoring agreed resolution of disciplinary complaints, we find that it should be approved.

Accordingly, it is hereby ordered that the respondent, Chris P. Kouros, is sus-

---

**2.** That rule provides, in relevant part, that contingent fee agreements shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

pended from the practice of law in this state for a period of not fewer than twelve (12) months, beginning October 23, 2000, at the conclusion of which his readmission to the practice of law, should he choose to pursue it, shall be conditioned upon his successful petition before the Court pursuant to Ind.Admission and Discipline Rule 23(4).

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the United States District Courts in this state, and the clerks of the United States Bankruptcy Courts in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.