**Elmer BENNETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0609–CR–739.

Court of Appeals of Indiana.

Aug. 2, 2007.

David Becsey, Zeigler Cohen & Koch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Barbara A. Nardi, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Elmer Bennett[1] appeals his convictions for auto theft as a class D felony[2] and theft as a class D felony.[3] Bennett raises one issue, which we revise and restate as

---

1. Bennett told the arresting officers that his name was Elmer E. Bennett. Bennett wrote a letter to the trial court indicating that his actual name is Michael Dewayne Bennett. The presentence investigation report lists Bennett's true name as "Elmer Eugene Bennett" and his aliases as "Michael Bennett" and "Gene Bennett." Presentence Investigation Report at 1.

2. Ind.Code § 35–43–4–2.5 (2004).

3. Ind.Code § 35–43–4–2 (2004).

whether the evidence is sufficient to sustain Bennett's convictions. We affirm.

The facts most favorable to the convictions follow. Bennett had been staying with Clifford Hardison for about a week. On the morning of October 22, 2005, Hardison saw his hunting knife in the center console of his car and three toolboxes in the trunk of the car. Later that day, Bennett asked Hardison if he could use his car because he wanted to talk to his boss about borrowing money. Hardison told him that he could not use the car but offered to give him a ride in the morning. Hardison had previously refused Bennett's request to use his vehicle but drove Bennett to work and other places. Bennett had never driven Hardison's vehicle.

When Hardison and his girlfriend went to bed that evening, Hardison's car keys were on the coffee table, and Bennett was sleeping on the couch. When Hardison woke up the next morning, his keys and car were gone as well as Bennett. Hardison reported the car as stolen. While the car was missing, Hardison had to call his father and a friend to get to the store and work.

On October 25, 2005, Indianapolis Police Officer Fred Carpenter observed Bennett sitting inside the vehicle at a gas station. Officer Carpenter ran a check on the license plate that revealed that the vehicle had been stolen. The vehicle was running at the time, the keys were in the ignition, and Bennett was sitting in the driver's seat. Hardison's hunting knife and toolboxes were not in the vehicle. Bennett had been living in the car, and there were clothes, socks, underwear, deodorant, and food bags in the car.

The State charged Bennett with auto theft as a class D felony and alleged that Bennett "did knowingly exert unauthorized control over the motor vehicle, to wit: 1991 Pontiac Grand Am automobile, of another person, to wit: Clifford Hardison, with the intent to deprive the person of any part of the vehicle's value or use." Appellant's Appendix at 15. The State also charged Bennett with theft as a class D felony and alleged that Bennett "did knowingly exert unauthorized control over the property, to wit: a buck knife and three tool boxes containing miscellaneous tools, of another person, to wit: Clifford Hardison, with the intent to deprive the person of any part of its value or use." *Id.* at 16.

At the bench trial, Bennett testified he left Hardison's residence at 6:45 p.m. after Hardison's girlfriend gave him the keys while Hardison was present. Bennett testified that he was going to see his boss to get money for cocaine, gas, and cigarettes to benefit himself, Hardison, and Hardison's girlfriend and that he was waiting for the "dope man to show up" when he was arrested. Transcript at 33. Bennett also testified that Hardison's girlfriend had sold the tools three weeks previously and that she and Bennett had bought crack with the proceeds.

After closing argument, the trial court asked whether the charging information stated that Bennett exerted unauthorized control over the motor vehicle "with the intent to permanently deprive the person of the vehicle's value or use or does it say with the intent to deprive the person of any part of the vehicle's value or use?" *Id.* at 48. Bennett's attorney stated that "there's case law that says that the State must prove a permanent deprivation and that anything less than that, they cannot get an auto theft conviction." *Id.* The trial court stated that "[t]he law does not require permanent, intent to permanently deprive the person." *Id.* at 49. The trial court found Bennett guilty as charged and sentenced Bennett to 730 days in the Indiana Department of Correction for each

conviction. The trial court ordered that the sentences be served concurrently.

■■■ The issue is whether the evidence is sufficient to sustain Bennett's convictions. When reviewing claims of insufficiency of evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Stewart v. State,* 768 N.E.2d 433, 435 (Ind.2002), *cert. denied,* 537 U.S. 1004, 123 S.Ct. 493, 154 L.Ed.2d 402 (2002). Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable factfinder could find the defendant guilty beyond a reasonable doubt. *Id.*

### A. *Auto Theft*

Bennett argues: (1) that the trial court misunderstood the elements of auto theft; and (2) that the evidence was insufficient to support his conviction.

#### 1. *Elements of Auto Theft*

■■■ Bennett argues that the finding of guilt rested upon the trial court's misunderstanding of the law. Specifically, Bennett argues that the State must prove that he intended to *permanently* deprive the owner of the value or use of the vehicle. Bennett directs our attention to the trial court's comment that "[t]he law does not require permanent, intent to permanently deprive the person." Transcript at 49.

The offense of auto theft is governed by Ind.Code § 35–43–4–2.5, which provides that "[a] person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of ... the vehicle's value or use ... commits auto theft, a Class D felony." While the statute does not require that the person exert unauthorized control with intent to permanently deprive the owner of the vehicle's

value or use, Bennett relies on *M.Q.M. v. State,* 840 N.E.2d 441 (Ind.Ct.App.2006), to argue that there must be evidence of intent to permanently deprive the owner of value or use.

In *M.Q.M.,* M.Q.M. and his friends took his parent's vehicle, drove it around, and returned the vehicle. 840 N.E.2d at 443. M.Q.M. took his parent's vehicle again that same day and one of M.Q.M.'s friends crashed the vehicle into a fence. *Id.* M.Q.M. and his friends ran through a nearby cornfield where police apprehended them. *Id.* The juvenile court adjudicated M.Q.M. to be a delinquent for committing auto theft, a class D felony if committed by an adult. *Id.* at 444. On appeal, M.Q.M. asserted that the State failed to prove beyond a reasonable doubt that he intended to deprive his parents permanently of the value or use of the car. *Id.* at 446. Another panel of this court held:

Until 1971, the general theft statute (currently Indiana Code Section 35–43–4–2) defined theft in relevant part as the knowing exertion of unauthorized control over the owner's property with the intent to " 'deprive the owner permanently of the use or benefit of the property[.]' " *Nicholas v. State,* 261 Ind. 115, 118, 300 N.E.2d 656, 659 (1973) (quoting Ind.Code § 35–17–5–3 (Lexis Nexis 1972)). In 1971, the legislature deleted the word "permanently" from the theft statute. *Id.* Since then, however, our supreme court has continued to read "permanently" into the theft statute to distinguish theft from criminal conversion, which Indiana Code Section 35–43–4–3(a) defines as the knowing or intentional exertion of unauthorized control over property of another person. *See, e.g., In re Kouros,* 735 N.E.2d 202, 204–05 (Ind.2000) ("The parties further agree that by allowing client funds held in trust to be used for purposes unrelat-

ed to the client without the clients' knowledge or consent, the respondent converted the clients' funds.... While it is true that, in the present case, the respondent temporarily used at least some client funds to cover his gambling debts, ... the agreed facts here evidence no intent permanently to deprive clients of their funds. This conclusion is fortunate for the respondent, since outright theft of client funds generally warrants very severe sanction, up to and including disbarment."); *Chanley v. State*, 583 N.E.2d 126, 130 (Ind.1991) (upholding refusal of theft defendant's instruction on lesser included offense of conversion: "Here, the element which distinguishes the greater [offense of theft] from the lesser [offense of conversion] is whether Chanley intended to deprive the owners of the use of their vehicles permanently or for an indefinite period of time.... We do not find any 'serious evidentiary dispute' relating to Chanley's intent to deprive, and find it inconceivable that he had any intention to return either vehicle."); *Decker v. State*, 528 N.E.2d 1119, 1121–22 (Ind. 1988) (same issue: "The distinguishing factor between theft and conversion is the intent to deprive the true owner of the use or value of the stolen goods.... There is no serious dispute of any probative value in the evidence concerning Decker's intent to permanently deprive the University of the use and value of its property."), *overruled on other grounds by Wright v. State*, 658 N.E.2d 563, 566 (Ind.1995).

The auto theft statute was first enacted in 1985, and we see no reason to interpret it differently from the general theft statute with respect to the element of intent to deprive.

*Id.* at 445–446. The panel concluded that "the State failed to prove beyond a reasonable doubt that he intended to deprive his parents *permanently* of the value or use of the car." *Id.* at 446 (emphasis added). We will examine the cases relied on in *M.Q.M.* to hold that the Indiana Supreme Court "has continued to read 'permanently' into the theft statute to distinguish theft from criminal conversion." *Id.*

### a. *In re Kouros*

In *In re Kouros*, the Indiana Supreme Court held that an attorney's "temporary use of clients' funds (which he held in trust) for purposes unrelated to the clients, without his clients' knowledge or consent, warrant[ed] a suspension from the practice of law for at least twelve months." 735 N.E.2d at 202. The court held:

The respondent's misuse of client funds is remarkably similar to that of the respondent in *Matter of Towell*, 699 N.E.2d 1138 (Ind.1998). There, a lawyer, after receiving a worker's compensation settlement on behalf of a client, deposited the proceeds into his client trust account, only to later use significant portions of the funds for the benefit of unrelated third parties. We noted that the lawyer purposely used funds belonging to one client to pay the obligations of another out of his "pooled" client trust account in the apparent good faith belief that other client funds would soon arrive to cover the expenditures. We noted further that

[The Court is] not persuaded that the respondent's actions were totally inadvertent or unwitting; however, we are convinced that he did not intend to deprive his worker's compensation client of the value or use of his funds sufficient to find theft of the funds. What he did was intentionally and without authorization use one client's funds for the benefit of others, intending all along to replace the money "very shortly" when the expected "re-

placement" funds became available. Unfortunately for everyone, the other client funds did not materialize for some time ... we view his acts as somewhat less culpable than outright theft. However, even in the absence of a finding that the respondent stole his client's money, his gross mishandling of funds held in trust for others nonetheless indicates serious professional shortcomings deserving of significant sanction, primarily for the protection of other clients.

*Towell* at 1142.

While it is true that, in the present case, the respondent temporarily used at least some client funds to cover his gambling debts, like in *Towell* the agreed facts here evidence no intent permanently to deprive clients of their funds.

*Id.*

#### b. *Chanley v. State*

In *Chanley,* the defendant was convicted of theft and robbery. 583 N.E.2d at 127. On appeal, the defendant argued that the trial court erred by refusing to tender instructions on conversion as a lesser included offense of theft and robbery. *Id.* at 130. In evaluating whether the instruction should have been given, the Indiana Supreme Court conducted a two-step inquiry. *Id.* The second part of the test was "to determine whether there is evidence before the jury that the lesser included offense was committed, but that the greater one was not," which "hinges on whether a serious evidentiary dispute exists with respect to the element which distinguishes the greater from the lesser offense." *Id.* The court noted that "the element which distinguishes [theft] from [conversion] is whether [the defendant] intended to deprive the owners of the use of their vehicles permanently or for an indefinite period of time." *Id.* The court noted that the defendant pointed to no evidence of any

intent on his part to return the vehicle and found that there was no serious evidentiary dispute relating to the defendant's intent to deprive. *Id.*

#### c. *Decker v. State*

In *Decker,* the Indiana Supreme Court also confronted the issue of whether the trial court erred by refusing to give an instruction that defined criminal conversion as a lesser included offense of theft. 528 N.E.2d at 1121. The court held that "[t]he question here is whether there was probative evidence which put into conflict the distinguishing factor between theft and conversion, that is, the intent to deprive the owner of the use or value of the stolen goods." *Id.* The court concluded that the trial court did not err by refusing to give the instruction because the evidence "clearly indicate[d] an intention to steal the ... property and to permanently deprive [the victim] of it" and there was no serious dispute of any probative value in the evidence. *Id.*

We acknowledge that some language in *Kouros, Chanley,* and *Decker* suggests that the distinguishing element between theft and conversion is the intent to deprive another person *permanently* of the value or use of property. However, these cases did not directly address a defendant's claim of insufficient evidence regarding the element to permanently deprive. The Indiana Supreme Court directly addressed such a claim in *Coff v. State,* 483 N.E.2d 39 (Ind.1985), which we find instructive.

In *Coff,* the defendant was convicted of theft. 483 N.E.2d at 42. On appeal, the defendant argued that "that the State did not establish that he intended to deprive anyone of property *permanently.*" *Id.* at 43 (emphasis added). The Indiana Supreme Court held "This argument again is

inapposite to the case. Ind.Code § 35–43–4–2 (Burns 1983 Cum.Supp.) proscribes taking with intent to deprive the owner of any part of the value or use of property—it no longer includes the commonlaw larceny element of intent to accomplish a permanent deprivation." *Id.* Based on *Coff,* we conclude that the State was not required to prove that Bennett exerted control over Hardison's vehicle with intent to *permanently* deprive Hardison of the vehicle's value or use. *See also Zavesky v. State,* 515 N.E.2d 530, 532 (Ind.1987) (holding that "[t]he element of theft not found in the criminal conversion statute is 'with intent to deprive the other person of any part of its use or value' ") (citing Ind.Code Ann. § 35–43–4–3 (Burns 1985) and Ind.Code Ann. § 35–43–4–2 (Burns Supp.1987)); *Irvin v. State,* 501 N.E.2d 1139, 1142 (Ind.Ct.App.1986) (holding that "[t]he sole distinction between [theft and conversion] is that to support a conviction for theft, the exertion of unauthorized control must be done 'with intent to deprive the other person of any part of [the property's] value or use....' I.C. 35–43–4–2 (Burns Code Ed. Repl.1985)"). Thus, to convict Bennett of auto theft as a class D felony, the State needed to prove that Bennett knowingly or intentionally exerted unauthorized control over Hardison's vehicle with intent to deprive Hardison of the vehicle's value or use.

### 2. *Sufficiency of the Evidence*

 Bennett argues that the State failed to prove that he intended to "deprive Mr. Hardison permanently of the value or use of the car." Appellant's Brief at 6. We will address Bennett's argument to the extent that the State failed to prove Hardison's intent to deprive Hardison of the vehicle's value or use. "Intent is a mental state, and absent an admission, the [factfinder] must resort to the reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, there exists a showing or inference of the required criminal intent." *Germaine v. State,* 718 N.E.2d 1125, 1132 (Ind.Ct.App.1999), *trans. denied.*

The record reveals that Bennett and the vehicle were not found until three days later and Bennett appeared to be living in the car during this time. Specifically, the record reveals, that on October 22, 2005, Bennett asked Hardison if he could use his car and Hardison refused. Hardison reported the car as stolen the following morning. On October 25, 2005, Indianapolis Police Officer Fred Carpenter observed Bennett sitting in the driver's seat of Hardison's vehicle at a gas station with the vehicle running at the time. Bennett had been living in the car, and there were clothes, socks, underwear, deodorant, and food bags in the car. The State presented sufficient evidence to show that Bennett intended to deprive Hardison of the use of the car. We conclude that evidence of probative value exists from which the trial court could have found Bennett guilty of auto theft as a class D felony. *See, e.g., Coff,* 483 N.E.2d at 43 (holding that the evidence was more than sufficient to demonstrate the intent element of Ind.Code § 35–43–4–2); *Prentice v. State,* 474 N.E.2d 496, 500 (Ind.1985) (holding that the evidence was sufficient to support a conviction of theft where defendant was driving a stolen car within a few days of theft, did not have owner's permission to drive the car, and attempted to flee from the police); *J.B. v. State,* 748 N.E.2d 914, 918 (Ind.Ct.App.2001) (holding that the evidence was sufficient to support a conviction of auto theft when the owner of a motor scooter testified that defendant did not have permission to use his scooter,

defendant was seen driving the motor scooter the morning after it was stolen, the scooter's license plate was missing, the lock and ignition had been broken, and when the owner confronted the defendant about the scooter, the defendant attempted to flee).

■ Bennett also argues that the evidence is insufficient to support his conviction for auto theft because he had received authority to borrow the car. Bennett argues that he obtained the keys from Hardison's girlfriend. At trial, Hardison testified that he told Bennett that he could not use the car. Hardison also testified that when he and his girlfriend went to bed at approximately 9:00 or 10:00 p.m., his car keys were on the coffee table, and Bennett was sleeping on the couch. Bennett merely asks that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Stewart,* 768 N.E.2d at 435. The State presented sufficient evidence that Bennett did not have authority to use the car.

## B. *Theft of Tools and Knife*

■ The offense of theft is governed by Ind.Code § 35-43-4-2, which provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Thus, to convict Bennett of theft as a class D felony, the State needed to prove that Bennett knowingly or intentionally exerted unauthorized control over Hardison's knife and toolboxes with intent to deprive Hardison of any part of its value or use. A theft conviction may be sustained by circumstantial evidence.

*Miller v. State,* 563 N.E.2d 578, 581 (Ind. 1990).

■ Bennett argues that the evidence is insufficient to support his conviction for theft as a class D felony because there was no evidence that he was aware of the tools or knife, exercised control over the tools or knife, or intended to permanently deprive Hardison of their value or use.[4] Bennett argues that the evidence "has succeeded only in showing as a whole a degree of suspicion that demonstrates Mr. Bennett had an opportunity to take the tools and knife." Appellant's Brief at 7. Bennett argues that "[b]y his testimony, Mr. Bennett would have believed the tools were not in the car." *Id.* We conclude that Bennett merely asks that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Stewart,* 768 N.E.2d at 435.

The facts most favorable to the conviction reveal that Hardison last saw the hunting knife and three toolboxes in his vehicle on the morning of October 22, 2005. Later that day, Bennett asked Hardison if he could use his car and Hardison refused. The following morning, both Bennett and the car were gone and Hardison reported the car as stolen. When the vehicle was recovered, Hardison's hunting knife and toolboxes were not in the vehicle. Evidence of probative value exists from which the trial court could have found Brown guilty of theft as a class D felony. *See, e.g., Kindred v. State,* 254 Ind. 73, 76, 257 N.E.2d 667, 668 (1970) (holding that the evidence was sufficient to support the defendant's conviction for theft where the defendant was the only person in the filling station at the time the money was taken).

---

4. We have already addressed Bennett's argument that the intent to permanently deprive is an element of theft. *See supra* Part A.1.

For the foregoing reasons, we affirm Bennett's convictions for auto theft as a class D felony and theft as a class D felony.

Affirmed.

BAILEY, J., concurs.

MAY, J., concurs in result with separate opinion.

MAY, J., concurring in result with separate opinion.

I believe *M.Q.M.* was correctly decided and a defendant may not be convicted of theft or auto theft without proof of intent to *permanently* deprive the owner of the item's value or use. Nevertheless the evidence most favorable to the judgment is sufficient to meet this standard. I would therefore affirm Bennett's convictions and I concur in the result.

The majority attempts to distinguish the cases cited in *M.Q.M.* because they "did not directly address a defendant's claim of insufficient evidence regarding the element to permanently deprive." (Op. at 322.) I do not find that distinction meaningful. In all of the decisions cited in *M.Q.M.*, our Indiana Supreme Court discussed the elements of theft. Regardless whether the court was defining the elements of theft for sufficiency or jury instruction purposes, the elements of theft are the elements of theft.

Moreover, the three decisions relied on by the majority were decided in 1987, 1986, and 1985, while the cases cited in *M.Q.M.* are from 2000, 1991, and 1988. It is unnecessary to speculate why our Supreme Court more recently decided "permanent" deprivation is an element of theft; I simply believe we must follow the most current pronouncement of our State's highest court. Accordingly, I would follow *Chanley, In re Kouros,* and *Decker,* as we did in *M.Q.M.*, and hold the State was required to prove Bennett intended to permanently deprive Hardison of his car, knife, tool boxes, and tools.

Nevertheless, I would affirm Bennett's convictions. The facts most favorable to the auto theft conviction are that Bennett took Hardison's car without permission on the night of October 22, 2005. When police located the car three days later, Bennett was in the driver's seat and the motor was running. The clothing, socks, underwear, deodorant, and food bags in the car demonstrated Bennett had been living in the car. A reasonable jury could conclude from those facts Bennett did not intend to return Hardison's car. I would accordingly affirm Bennett's conviction of auto theft.

Similarly, I find the evidence sufficient to convict Bennett of theft of the hunting knife, toolboxes, and tools. Those items were in Hardison's car when Bennett stole it, and they were not in the car when the police recovered it. Regardless what Bennett did with those items, their absence from the vehicle demonstrates he had no intention of returning them to Hardison, and thus intended to permanently deprive Hardison of their use or value.

For these reasons, I concur in the result.