**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**FREDERICK VAIANA**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PHILLIP ROGERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-987 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Reuben B. Hill, Judge
Cause No. 49F18-1201-FD-4195

**August 14, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Following a bench trial, the appellant-defendant, Phillip Rogers, was convicted of three counts of class D felony Theft.[1] The trial court sentenced Rogers to three concurrent terms of seven hundred and thirty days in the Indiana Department of Correction (DOC).

Rogers appeals, claiming that he did not make a knowing, voluntary, and intelligent waiver of his right to a jury trial. He also contends that there was insufficient evidence to sustain his convictions.

Concluding that Rogers effectively waived his right to a jury trial and finding sufficient evidence to sustain Rogers's convictions, we affirm the judgment of the trial court.

FACTS

The facts most favorable to the State reveal that on December 13, 2011, the security alarm at the Concrete Pour and Core, a business owned by Christopher Robinett,[2] went off. The alarm company contacted Robinett's tenant, who was listed as a primary contact, and told him to check Robinett's business. Unfamiliar with the layout of Robinett's business, the tenant found nothing out of place. However, the next morning the tenant contacted Robinett to inform him of what had happened the day before. Robinett, upon arriving at his business, also did not notice that anything was out of place

---

[1] Ind. Code § 35-43-4-2.

[2] Although the state spells the victim's name as Robinette, we will use the spelling set forth in the transcript.

because he had an extensive amount of tools and would only have noticed that certain items were missing when he had the occasion to use them.

On January 5, 2012, Robinett went to the Westside Loan Company, a pawn shop in Indianapolis where he buys Shop-Vacs. According to Robinett, his business uses fifty to one hundred Shop-Vacs a year, so he oftentimes buys them at the pawn shop to save money. As Robinett approached the counter in the pawn shop, he looked down and spotted a generator marked with his paint signet and his name. Realizing that the generator must have been stolen the night his alarm went off, Robinett contacted the police and inventoried his warehouse for other missing items. He discovered his hydraulic ring saw, a water pump, one jigsaw, a Hilti hammer drill, and four drills, including a Black and Decker electric drill, were also missing. Robinett recovered a total of nine items belonging to him from the pawn shop. Robinett testified that his ring saw is a specialty saw and that he did not notice it was missing because he rarely used it and had put it in a case because it was valuable.

Indianapolis Metropolitan Police Department (IMPD) Detective Jerry Salluom began his investigation on January 5, 2012. He testified that during the course of his investigation he realized that Rogers sold Robinett's drills, generator, and jigsaw on December 13, 2011, that he sold the water pump on December 23, 2011, and that on December 31, 2011, he sold the ring saw. Detective Salluom made these determinations by matching Rogers's fingerprints with those from the pawn shop cards. Detective Salluom then contacted Rogers, whose residence was "less than a quarter mile" from

3

Robinett's warehouse, and interviewed him. Rogers admitted that he had pawned the items but denied stealing them or knowing that they were stolen. He claimed he had purchased the items from a Hispanic man named Chris because he needed the tools to rehabilitate houses. However, Rogers gave no further description or information about Chris.

On January 20, 2012, the State charged Rogers with three counts of class D felony theft. During Rogers's initial hearing on January 23, 2012, the trial court advised Rogers of his right to a jury trial. On August 20, 2012, Rogers filed a waiver of jury trial notice indicating that on July 9, 2012, he had signed a waiver of jury form. The form stated:

> The Defendant understands that a jury consists of six fair and impartial members of the community selected to sit and listen to the evidence presented in this case and decide whether the defendant is not guilty or guilty of the crimes(s) charged. The Defendant understands that if accepted by the Court, the waiver of jury trial means that a judge, and not a jury, would sit and hear the evidence in this case. The Defendant hereby freely and voluntarily waives his right to a trial by jury and asks that this case be set for trial by the Court without intervention of a jury.

Appellant's App. p. 1.

Rogers's bench trial commenced on October 15, 2012. However, before the trial began, the trial court stated that it had taken Rogers's jury trial waiver under advisement and informed him that he had an absolute right to have the matter tried before a jury. The trial court also explained to Rogers how a jury would be selected and how the jury members would reach their decision, including the fact that the jury would consist of six individuals, all of whom would have to agree on a verdict. The trial court specifically

asked Rogers if giving up his right to a jury trial was his own decision, and he agreed that it was. Finally, the trial court asked Rogers if he wished to give up his right to a jury trial and have the matter tried before the trial court. Rogers, after speaking privately with his counsel, answered affirmatively.

The trial court accepted Rogers's waiver of his right to a jury trial, and the bench trial proceeded. The trial court found Rogers guilty of three counts of theft and sentenced him to concurrent terms of seven hundred and thirty days in the DOC, with some of the time suspended to probation and home detention. Rogers now appeals.

DISCUSSION AND DECISION

I. Waiver of Jury Trial

Rogers first contends that he did not knowingly, voluntarily, and intelligently waive his right to a trial by jury. Specifically, Rogers asserts that his convictions must be reversed because he did not affirmatively waive his right to a trial by jury and that the record fails to reflect his execution of any written waiver of a trial by jury or the fact that he understood the contents of that waiver prior to its being filed on his behalf.

Article 1, Section 13 of the Indiana Constitution guarantees criminal defendants the right to a trial by jury. A person charged with a felony has an automatic right to a jury trial; the defendant is presumed not to waive this right unless he affirmatively acts to do so. Poore v. State, 681 N.E.2d 204, 207 (Ind. 1997). A defendant may waive this right if he does so in an intelligent and voluntary manner. Id. at 206. A valid waiver of this right requires "that an assent by the defendant be personally reflected in the record

5

before the trial begins either in writing or in open court." <u>Kellems v. State</u>, 849 N.E.2d 1110, 1112 (Ind. 2006). This is to assure that the waiver is "made in a knowing, intelligent, and voluntary manner, with sufficient awareness of the surrounding circumstances and the consequences." <u>Id.</u> "Thus, it is the duty of the trial court 'to assume in a criminal case that the defendant will want a trial by jury,' unless the defendant personally indicates a contrary desire in writing or verbally in open court.'' <u>Id.</u> (quoting <u>Perkins v. State</u>, 541 N.E.2d 927,927 (Ind. 1989). This waiver must be made part of the record "so that the question of an effective waiver can be reviewed even though no objection was made at trial." <u>Id.</u>

Here, Rogers argues that the filing of his written waiver was insufficient to show that he affirmatively waived his right to a jury trial. However, Rogers has failed to provide this court with a copy of his written waiver, and we therefore find that Rogers has waived his appellate rights with respect to this claim.

The Indiana Appellate Rules impose on defendants the duty to submit to this Court "documents from the Clerk's record in chronological order that are necessary for the court to decide the issues presented." Ind. Appellate Rule 50(A)(2). More particularly, an appellant must see that the record proceeding contains all pleadings, papers, and transcripts of testimony that have any bearing on the error he is alleging. <u>Turner v. State</u>, 508 N.E.2d 541, 543 (Ind. 1987). Failure to present a complete record that such an intelligent review of the issues may be made results in waiver of the alleged errors. <u>Id.</u>

6

As noted above, Rogers did not present this Court with the form he signed waiving his right to a jury trial and thus has not provided this Court with a sufficient record to enable us to review his claim that he did not knowingly, voluntarily, and intelligently waive his right to a trial by jury. Thus, he has waived the issue.

Waiver notwithstanding, the record clearly shows that on July 9, 2012, Rogers signed a form waiving his right to a trial by jury. Appellant's App. p. 1. Moreover, the October 15, 2012 colloquy between the trial court and Rogers before his trial shows that Rogers's waiver was knowing, voluntary, and intelligent. The trial court advised Rogers concerning his rights to a jury trial and the differences between a jury trial and a bench trial before accepting his waiver. Tr. p. 1-4. At no point during this colloquy did Rogers object to a bench trial. Accordingly, it is apparent to us that Rogers not only waived his right to a jury trial in writing, but he also did so in open court.

## II. Sufficiency of the Evidence

Rogers next contends that there was insufficient evidence to support his theft conviction. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses, considering instead only the evidence supporting the conviction and any reasonable inferences that may be drawn from that evidence. Gonzalez v. State, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009). We will affirm if there is substantial evidence of probative value to support the conviction. Cox v. State, 774 N.E.2d 1025, 1028-29 (Ind. Ct. App. 2002).

7

To convict Rogers of class D felony theft of Robinett's drill, generator, jigsaw, water pump and concrete saw, the State had to prove beyond a reasonable doubt that Rogers knowingly or intentionally exerted unauthorized control over Robinett's property with the intent to deprive Robinett of any part of the property's value or use. Ind. Code § 35-43-4-2.5(b).

Although Rogers does not deny that he possessed and sold Robinett's tools and generator to the pawn shop, he denies stealing the items or having any knowledge that they were stolen. Instead, Rogers claims that he purchased the items from a Hispanic man named Chris for the purpose of using the tools to rehabilitate houses. Tr. p. 24. However, Rogers's claims merely amount to a request to reweigh the evidence, which we may not do.

A theft conviction may be sustained solely by circumstantial evidence. Bennett v. State, 871 N.E.2d 316 (Ind. Ct. App. 2007). Here, the record shows that on December 13, 2011, the day Robinett's alarm was set off, Rogers had possession of Robinett's tools because he pawned Robinett's drills, generator, and jigsaw on that day. Rogers also pawned the remaining missing items by the end of the month. Tr. p. 17-22. The short time frame between the time when Rogers obtained possession of the tools and the time when he pawned the items could have led a reasonable fact finder to infer that Rogers had no intention of using the items for rehabilitating houses as he claimed but instead that he had participated in their theft. This inference is further supported by the fact that Rogers lived less than one quarter mile from Robinett's business.

8

Rogers finally contends that because the State failed to prove when Robinett's items went missing, the State must show exclusive possession of the items by him during the time they were missing from Robinett's business to the time they were discovered at the pawn shop. Id. at 13. In support of this contention, Rogers relies on Williams v. State, 714 N.E.2d 671 (Ind. Ct. App. 1999). In Williams, this Court held that when the length of time between the theft and the discovery of the property in the defendant's possession is not recent, there must be a showing that the defendant's possession was exclusive. 714 N.E.2d at 673. However, Rogers apparently overlooks the corresponding rule stated in Williams that when the length of time between the theft and possession of stolen property is short, that fact in and of itself supports an inference of theft involving that property. Id. Here, where Rogers possessed several of the stolen items the very same day, the inference is that those items were stolen. Thus, this argument fails.

## Conclusion

In conclusion, Rogers waived his contention that his written waiver of a trial by jury was not knowingly, voluntarily, and intelligently made. Waiver notwithstanding, we conclude that no error was committed because Rogers not only waived his right to a trial by jury in writing, he also did so in open court. Finally, we conclude that sufficient evidence existed to support Rogers's convictions for three counts of class D felony theft.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.

9