## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 26 2019, 7:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James D. Crum
Coots Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark D. Walker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 26, 2019

Court of Appeals Case No.
19A-CR-621

Appeal from the Hamilton
Superior Court

The Honorable Gail Z. Bardach,
Judge

Trial Court Cause No.
29D06-1802-F6-1362

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Mark Walker (Walker), appeals his conviction for theft, Ind. Code § 35-43-4-2(a)(1)(A), a Level 6 felony.

We affirm.

# ISSUE

Walker presents us with one issue on appeal, which we restate as: Whether the State produced sufficient evidence to prove beyond a reasonable doubt that he committed theft.

# FACTS AND PROCEDURAL HISTORY

In 2013, Walker was hired as an assistant manager at a Dairy Queen franchise in Fishers, Indiana. In 2015, the franchise's owners, Jason Llewellyn (Jason), Missy Llewellyn (Missy), and Jim Duncan (collectively, the owners) promoted Walker to the position of general manager. One of the duties of the general manager was to check the daily cash receipts against a sales record generated by the franchise's point of sales system to ensure that the two figures matched. If there were any discrepancy or cash shortfall, the policy was that the general manager was to report it immediately to Missy so that the issue could be investigated and addressed. Walker was aware of this policy and reported issues to Missy prior to the spring of 2017. Another duty of the general manager was to deposit cash receipts into the franchise's bank account. Only Walker and the three owners had access to the part of the franchise's safe that

held the daily cash deposits. Walker never reported to Missy any cash shortfalls or missing daily deposits.

[5] On August 14, 2017, while Jason was traveling internationally, he checked in on the franchise's business using an application on his cellphone. Jason noticed that no cash had been deposited into the franchise's bank account for a week. Jason texted Walker to remind him of the policy that deposits were to be made daily and requested that the outstanding deposits be made immediately. Walker responded via text that he had just made the deposits, he was "totally caught up," and that deposits would be made on a daily basis, as per company policy. (Transcript Vol. II, p. 130).

[6] Upon his return home, Jason, who is also a certified public accountant, reviewed the franchise's financial records and discovered that cash deposits from July 29, 2017, through August 6, 2017, were also missing. Jason texted Walker inquiring about the additional missing deposits and was told by Walker that he was "still behind on a few things." (Tr. Vol. II, p. 131). By August 23, 2017, many of the missing deposits still had not been made. Walker sent the owners an email entitled "Elephant in the room" in which he acknowledged that nine deposits for dates spanning from July 31, 2017, to August 17, 2017, had not been made. Walker wrote,

> I know this is a problem and I am taking care of it. If you can
> bear with me until next Tuesday, I will have everything deposited
> and up to date. I understand this is a big leap of faith on you [sic]
> part. I know this looks extremely bad and that you have lost
> total confidence in me. I will get the deposits in order, and if you

wish, I will resign.  I can fully understand if you do not want me managing you [sic] store anymore.

(Exh. 5, Vol. IV, p. 26).  Walker did not make the missing deposits, which totaled $7,226.64.  On August 29, 2017, he sent the owners an email in which he explained that the missing deposits were the result of his attempt to cover theft by another employee but that he had recently decided that the shortfalls he was covering were really the result of a glitch in the point of sales system. Walker stated that, "I know that I am financially responsible for this issue.  I have planned to get a loan to cover the shortage."  (Exh. 6, Vol. IV, p. 28).  On August 29, 2017, Walker also tendered his resignation.  The owners verified that there was no glitch in their point of sales system, and they uncovered no other evidence of significant theft by any other employee.  Walker was subsequently interviewed by the Fishers Police Department, where he initially claimed that he had made the missing deposits before offering the same alternate explanations that he had offered the owners.

[7]  On February 21, 2018, the State filed an Information, charging Walker with two Counts of Level 6 felony theft and one Count of Class A misdemeanor theft.  On January 29, 2019, the State proceeded to a jury trial on one Level 6 felony theft charge and on the Class A misdemeanor theft charge.  The jury found Walker guilty as charged.  On February 25, 2019, the trial court "merged" Walker's misdemeanor theft conviction and sentenced him on the Level 6 felony theft conviction to 910 days, with 120 days to be executed in jail,

425 days on work release, and the remainder suspended to probation. (Appellant's App. Vol. II, p. 98).

[8] Walker now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[9] Walker challenges the evidence supporting his conviction. It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id*. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

[10] The State charged Walker with Level 6 felony theft in relevant part as follows:

> [B]etween July 31, 2017 and August 17, 2017 [] Walker did knowingly exert unauthorized control over the property of Dairy Queen [], to-wit: U.S. Currency, with the intent to deprive Dairy Queen [] of any part of the use or value of the property, said property having a value of at least seven hundred fifty dollars and less than the value of fifty thousand dollars.

(Appellant's App. Vol. II, p. 12). On appeal, Walker concedes that the State proved that he knowingly exerted unauthorized control over the missing cash deposits. However, he disputes that the State proved beyond a reasonable doubt that he did so with the requisite intent to deprive the owners of any part of the value or use of their property. The intent element of theft "may be

proven by circumstantial evidence" and may be "inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." *Long v. State*, 935 N.E.2d 194, 197 (Ind. Ct. App. 2010), *trans. denied*.

[11] Here, the circumstances surrounding Walker's unauthorized control of the owners' cash established the requisite intent to deprive. Walker was the only person responsible for making the daily cash deposits. Although there was some leeway in the policy to accommodate other duties and days off, Walker violated the policy by failing to make at least nine deposits. Walker, who had a regular channel of communication with Missy to report problems, did not report to Missy or anyone else that he had failed to make the deposits. Walker did not say anything about the missing deposits until August 14, 2017, when he was confronted by Jason about a week's worth of missing cash. The jury could have reasonably inferred from these circumstances that Walker intended to keep the missing cash, depriving the owners of the value and use of that cash, and was only prevented from doing so when he was confronted with his theft. Walker then lied and stated that he had just made the deposits and that he was "totally caught up." (Tr. Vol. II, p. 130). Walker subsequently offered a number of excuses as to why the deposits were missing, including shuffling the cash to cover for another employee's theft and that the shortfall he was covering was the result of a computer glitch, none of which was true. These changing explanations and excuses additionally supported an inference of Walker's guilty

intent because it could be reasonably inferred that Walker's changing statements were an attempt to conceal the fact that he simply stole the money.

[12] Walker directs our attention to evidence that he took responsibility for the missing deposits and offered to repay the money. Walker initially argues that, in light of this evidence, the State did not make its case on his intent to deprive because it did not establish that he meant to permanently deprive the owners of their cash. However, as correctly observed by the State, intent to permanently deprive a victim of the value or use of their property is not an element of theft. *See Bennett v. State*, 871 N.E.2d 316, 322 (Ind. Ct. App. 2007) (holding that the offense of theft "'no longer includes the commonlaw larceny element of intent to accomplish permanent deprivation'" (quoting *Coff v. State*, 483 N.E.2d 39, 42 (Ind. 1985)), *opinion adopted by Bennett v. State*, 878 N.E.2d 836 (Ind. 2008).

[13] Walker also contends that, in light of his offer to repay the missing money, there was no evidence of his intent to deprive the owners of the value or use of their cash and that the failure to credit the evidence of his "contrary intent" resulted in the State convicting him of theft when it merely proved the offense of conversion. (Reply Br. p. 5). However, as set forth above, there was sufficient evidence from which the fact-finder could reasonably infer Walker's intent to deprive the owners of the value or use of the missing cash, and any subsequent offers of repayment once he was caught do not negate that reasonable inference of Walker's intent when he exerted his unauthorized control over the deposits. Walker's argument is essentially an invitation to consider evidence that does not support the jury's verdict and to reweigh the

evidence, neither of which we are permitted to do pursuant to our standard of review. *See Drane*, 867 N.E.2d at 146. Accordingly, we hold that the evidence was sufficient to sustain Walker's conviction for Level 6 felony theft.

## CONCLUSION

Based on the foregoing, we conclude that the State proved beyond a reasonable doubt that Walker committed the offense of theft when he acted with the requisite intent to deprive the owners of the value or use of their cash.

Affirmed.

Vaidik, C. J. and Bradford, J. concur